UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 7 |
| ROBERT JOSEPH CARBRAY and MARIA AUGUSTA GONDRA CARBRAY, | Case No. 04-13984-GBN |
| Debtors. | |
| JOHN W ACER, and MARCELO O FIORETINO, | Adversary No. 04-01207 |
| Plaintiffs, | |
| vs. | FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER |
| ROBERT JOSEPH CARBRAY and MARIA AUGUSTA GONDRA CARBRAY, | |
| Defendants. | |

The adversary complaint of plaintiffs John W. Acer[1] and Marcelo O. Fiorentino

("plaintiffs") to determine the dischargeability of a bankruptcy claim against defendants Robert

Joseph Carbray and Maria Augusta Gondra Carbray ("defendants") was tried to the court as a

bench trial on April 27, June 6 and July 28 of 2006. Following post trial briefing, an interim order

was entered on August 28, 2006, announcing the court's decision.

---

[1] It is unusual for plaintiff Fiorentino's legal counsel to name himself as a party plaintiff in the adversary complaint. The court assumes without deciding, that this simply represents a security assignment to protect counsel's fee and not a violation of ER 1.8(a)(1), Ariz. R. Prof Conduct. See Skarecky & Horenstein, P.A. v. 3605 N. 36th St. Co., 170 Ariz. 424, 825 P.2d 949, 952 (Ariz. App. 1991).

1    The court has considered sworn witness testimony, admitted exhibits and the facts

2  and circumstances of this proceeding.  The following findings and conclusions are now entered:

3                                          **FINDINGS OF FACT**

4         1. Maria Augusta Gondra Carbray ("Mrs. Carbray") was a citizen of Argentina and

5  a 1996 graduate of an Argentine law school, who worked for that nation's Attorney General in

6  administrative assignments involving budgeting and diplomatic matters.  A short relationship with

7  plaintiff Fiorentino resulted in the September 15 of 1996 birth of a son, Juan Cruz Fiorentino

8  Gondra, in Buenos Aires.  Mr. Fiorentino initially had little or no contact with Juan Cruz.  Mrs.

9  Carbray never requested and Mr. Fiorentino never paid child support.  Mr. Fiorentino's testimony

10  is that he had no knowledge he was a father until a paternity action was brought against him.  The

11  parties never married.  Mrs. Carbray supported herself and her son as a single parent.  In July of

12  1998, she instituted Argentine litigation that established Fiorentino as the natural father, based on

13  genetic testing.  Once paternity was established, he took an interest in the boy and started visiting.

14  Mrs. Carbray encouraged contact between Juan Cruz and Mr. Fiorentino and his family.  In 1999,

15  three or four months after completing the paternity action, she traveled to the United States with

16  her son to visit her brother.  Mr. Fiorentino was required to give his notarized written consent,

17  good for 60 days, to allow the child's American visit.  He did so.  Testimony ("test.") of Maria

18  Augusta Gondra Carbray and Marcelo O. Fiorentino.

19         2.  During her Arizona visit, Mrs. Carbray met Robert J. Carbray in December of

20  1999.  They married in February of 2000.  She chose to remain in the United States with Juan

21  Cruz. The parties dispute whether Mrs. Carbray informed plaintiff Fiorentino where Juan Cruz

22  was living and how to contact him.   Mr. and Mrs. Carbray's testimony is that Mr. Fiorentino

23  ignored repeated letters and telephone calls placed to explain the circumstances of Juan Cruz

24  remaining in America. They portray him as a disinterested father.  His conflicting testimony is that

25  he had no knowledge where his son was located or how to contact him.  There is no dispute that

26  Mr. Fiorentino did not consent to his son's extended absence in America, however.

27

28

1         In contrast to the charge of an indifferent father[2], plaintiff Fiorentino contacted the

2 Argentine Central Authority for the Hague Convention, seeking the return of his son. The

3 Authority contacted the United States Department of State. The Department of State sent a

4 May 23, 2000, letter to Mrs. Carbray advising that the father made kidnaping allegations and that

5 she should voluntarily return the child to Argentina for determination of custody. Mrs. Carbray

6 acknowledges receipt of the letter, but testified she felt she could settle the issue by retaining Juan

7 Cruz in the United States, while attempting to contact the father through letters, phone calls and

8 her brother, who is also an Argentine attorney. Mr. and Mrs. Carbray testified that the father was

9 unresponsive to their attempts to communicate. He denies this and also denies having a phone

10 number to reach his son. It is undisputed that Mrs. Carbray, failing to reach a resolution with Mr.

11 Fiorentino, did not return the boy to Argentina. The court finds that Mrs. Carbray, as a legally

12 educated, intelligent adult, should know better. Test. of defendants and plaintiff Fiorentino.

13         3. With the financial assistance of the Argentine government, plaintiff Fiorentino

14 brought suit and personally appeared in Maricopa County Superior Court action DR 2000-017267.

15 On short notice to Mrs. Carbray, a September 23, 2000, hearing was conducted concerning custody

16 of the minor child. Although Mr. Carbray was not a named defendant, he testified, as did Mrs.

17 Carbray and plaintiff. The court found in part:

18       . . . Mother, when she traveled to Phoenix, was traveling on a
      vacation/visitor's permit and that it was anticipated that she would
19       be returning with Juan to Argentina not to exceed two months, and
      that was reflected in the travel authorization signed by both
20       Mother and Father in front of a notary in Argentina. Thus,
      Father's under-standing and agreement was that Juan would be
21       away for a two-month period from December 3, 1999 and
      returning by February 3, 2000.
22
      . . . [A]round February 3, 2000 . . . Mother sent letters to Father
23       notifying Father that she would not be returning to Argentina on
      February 3, 2000, due to a change in plans. Mother tried to mail
24       the letter to Father as testified by Mother and shown by the records

25 _____

26     [2]Mrs. Carbray appears to this fact finder to be a devoted mother and fine person. Our nation
is fortunate to have her as a newly naturalized citizen. However, she is unable to reconcile her
27 characterization of plaintiff as an indifferent father with his efforts in mounting international legal
litigation to reclaim his child, other than to speculate an intense personal hatred. Test. Id.,
28 (questioning by the court). Such speculation is not evidence and not credible to this fact finder.

1    of the postal service to reflect mailing of those letters. The Court
     finds that no authority was granted by Father beyond 60 days for
2    travel. . . .

3    THE COURT FINDS Argentina is the habitual residence of the
     child and that the child has been wrongfully detained in the United
4    States, under the Hague Convention. It is the Court's determina-
     tion that the child is to be returned to Argentina for the Argentina
5    court to make a determination regarding custody. . . .

6    Plaintiff Fiorentino was granted temporary physical and sole custody of the child

7    by the Arizona court for an immediate return to Argentina. At a December 6, 2000, hearing the

8    Arizona court awarded an attorney's fee of $5,600 and cost reimbursement of $2,257 to plaintiff

9    Fiorentino and against Mrs. Carbray, under the International Child Abduction Remedies Act, 42

10   U.S.C. §11601 et. seq. Judgment was entered on March 20, 2001 against Mrs. Carbray. Fiorentino

11   test.; Superior Court minutes for September 23, 2000 at 4-5, exhibits ("exs.") 1-2 and 4.

12   4. Mrs. Carbray returned to Argentina and negotiated an agreement with the father

13   allowing her custody of Juan Cruz and residence in the United States under a joint custody

14   arrangement. The Argentine court rejected the initial agreement, as it waived child support and

15   jurisdiction. A second agreement which did not mention child support was approved. Mrs.

16   Carbray returned to the United States in December of 2000. Juan Cruz followed in January of 2001

17   and remains in the Carbray home. Defendants filed a voluntary Chapter 7 bankruptcy petition in

18   the District of Arizona on August 9, 2004. On November 22 of 2004, plaintiffs filed an adversary

19   complaint against defendants, seeking denial of discharge of the attorney's fee and cost award. By

20   oral order of August 23, 2005 this court denied plaintiffs' summary judgment motion and required

21   the parties to present evidence on the dischargeability issues. Test. of Mrs. Carbray; Bankruptcy

22   administrative file 04-13984-GBN at docket ("dkt.") 1; Bankruptcy adversary file 04-01207 at dkts.

23   1, 23.

24   5. To the extent any of the following conclusions of law should be considered

25   findings of fact, they are hereby incorporated by reference.

26                                   **CONCLUSIONS OF LAW**

27   1. To the extent any of the above findings of fact should be considered conclusions

28   of law, they are hereby incorporated by reference.

                                          – 4 –

1    2. Jurisdiction of defendants' bankruptcy case is vested in the United States District

2    Court for the District of Arizona. 28 U.S.C. §1334(a)(1994). That court has referred all cases under

3    Title 11 of the United States Code and all adversary proceedings and contested matters arising

4    under Title 11 or related to a bankruptcy case to this court. 28 U.S.C. §157(a)(1994); Amended

5    District Court General Order 01-15. This adversary proceeding having been appropriately referred,

6    this court has core bankruptcy jurisdiction to enter a final order regarding dischargeability of

7    plaintiffs' claim. 28 U.S.C. §157 (B)(2)(I). No party has argued to the contrary.

8    3. This court's conclusions of law are reviewed de novo. Its factual findings are

9    reviewed for clear error. Hanf v. Summers (In re Summers), 332 F.3d 1240, 1242 (9th Cir. 2003).

10   Findings of fact, whether based on oral or documentary evidence, will not be set aside unless

11   clearly erroneous. Due regard is given to the opportunity of the bankruptcy court to judge witness

12   credibility. Rule 8013, F.R.B.P. The appellate court accepts the bankruptcy court's findings,

13   unless upon review, it is left with the definite, firm conviction that a mistake has been committed.

14   Ganis Credit Corp. v Anderson (In re Jan Weilert RV, Inc.) 315 F.3d 1192, 1196 (9th Cir.) amended

15   by 326 F.3d 1028 (9th Cir. 2003).

16   4. The standard of proof required of a plaintiff for dischargeability litigation is the

17   preponderance of the evidence. This standard applies to all dischargeability proceedings without

18   exception. Branam v. Crowder (In re Branam), 226 B.R. 45, 52 (B.A.P. 9th Cir. 1998), aff'd 205

19   F.3d 1350 (9th Cir. 1999). Plaintiffs litigated their case as an objection to dischargeability of their

20   claim pursuant to 11 U.S.C. §523 (a)(6).[3]

21   5. The Hague Convention on the Civil Aspects of International Child Abduction,

22   Oct. 25, 1980, 19 I.L.M. 1501, provides that one of its primary objects is to secure the prompt

23   return of children wrongfully removed or retained in a contracting state. The premise is that the

24

25       [3]Plaintiffs were directed by the court to file an amended complaint. February 24, 2005 minute
26   entry, dkt. 7. The amended complaint invoked section 523 generally, without specifying a specific
     subsection. Dkt. 8 at p. 1. By the time of oral argument on plaintiffs' summary judgment motion,
27   the cause of action had settled at 11 U.S.C. 523(a)(6). August 23, 2005 transcript at pgs. 2-6, dkt.
     24. Plaintiffs' brief invocation of section 523(a)(5) in the closing brief will not be considered. Dkt.
28   37 at p. 5.

– 5 –

Convention should deprive parties of any tactical advantage gained by absconding with a child to a more favorable forum. It is intended to prevent the use of force to establish artificial jurisdictional links on an international level regarding obtaining custody of a child. Its focus is whether a child should be returned to a country for custody proceedings, not what the outcome of those proceedings should be. The duty to return a child under the provisional remedy of the Convention arises only if the child's removal or retention was wrongful. Removal or retention is wrongful where it is in breach of rights of custody of a person, either jointly or alone under the law of the state where the child was habitually resident immediately before the removal or retention. Holder v. Holder, 392 F.3d 1009, 1013-14 (9th Cir. 2004). The Convention is implemented in the United States by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§11601-11610. The conclusion that a child has been wrongfully removed obligates a court to order the child's return to the country of removal. ICARA actions may be brought in federal or state court. Gonzalez v. Gutierrez, 311 F.3d 942, 944-45 (9th Cir. 2002). In the instant case, the judgment awarded to plaintiff Fiorentino and against Mrs. Carbray was made pursuant to ICARA's costs and fees provision. 42 U.S.C. §11607 (b). Ex. 4.

6. A chapter 7 discharge does not discharge an individual from any debt for willful and malicious injury by the debtor to another or to the property of another. 11 U.S.C. §523(a)(6). It is insufficient under §523(a)(6) to show debtor acted willfully and that the injury was negligently or recklessly inflicted. It must be shown not only that debtor acted willfully, but also that the debtor inflicted the injury willfully and maliciously, rather than recklessly or negligently. Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1207 (9th Cir. 2001)(citing authority). This court is to analyze the willful and malicious prongs of the dischargeability test separately. Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1105-06 (9th Cir. 2005).

7. The willful injury requirement of §523(a)(6) is met by showing that either debtor had a subjective motive to inflict injury or believed injury was substantially certain to occur as a result of her conduct. In re Jercich, 238 F.3d at 1208-09 (An employer's willful failure to pay an employee is substantially certain to injure the employee). Even to fully credit Mrs. Carbray's testimony that she attempted to settle the dispute by contacting the father, it was clear she had not

resolved the dispute. Nonetheless she continued to retain the child in America, knowing full well she had exceeded the permissible removal consent period and that the father had contacted Argentine authorities and caused a demand letter[4] to be sent to her by the Department of State. The court does not simply take the debtor's word for her state of mind. The court may consider circumstantial evidence to establish what debtor must actually have known when taking the injury producing action. Carrillo v. Su (In re Su), 290 F.3d 1140, 1146 at n.6 (9th Cir. 2002). Her conscious action in retaining the child against Mr. Fiorentino's express objection was subjectively known by her to be substantially certain to injure his rights as a father. The willful injury requirement has been met as to Mrs. Carbray.

8. The malicious injury requirement of §523(a)(6) is met when it is shown that (1) a wrongful act (2) was done intentionally (3) which necessarily caused injury (4) and was done without just cause and excuse. This four-part definition does not require an intent to injure, only an intentional act that causes injury. In re Sicroff, 401 F.3d at 1106 (Dissemination of libelous statements directed at plaintiff's professional reputation is a malicious injury). Mrs. Carbray's action in retaining the child in America was clearly a wrongful act under ICARA, intentionally done. Retaining the child in a foreign country against the express objections of the father necessarily causes injury. The proffered just cause and excuse is the father's alleged failure to communicate with her and alleged prior disinterest in the child. Whatever validity these excuses had evaporated when she learned the father was invoking international law to effect the child's return. At that time the proper response is to take or send the child to Argentina for resolution of the custody dispute by the same judicial system Mrs. Carbray utilized to establish paternity. This she did not do. The malicious injury requirement has been met as to Mrs. Carbray.

9. The amended complaint simply alleges Mr. Carbray "aided and abetted" the "kidnaping" of the minor child. No further details regarding actions of the husband were established by plaintiffs at the trial, other than his marriage to Mrs. Carbray. Mr. Fiorentino simply

---

[4]Neither party introduced the May 23, 2000 letter as an exhibit. The Superior court found the letter stated she should return the child to Argentina and that she neither did so nor brought a custody action in Argentina to resolve the dispute. Ex. 1 at p. 5.

- 7 -

1   testified that he had seen Mr. Carbray on two occasions and talked to him on the telephone. The

2   judgment was not entered against Mr. Carbray and fails to indicate either that it is a marital

3   community debt or only the sole and separate obligation of Mrs. Carbray. Clearly Mr. Carbray is

4   not the father of Juan Cruz, nor does he have legal custody of the minor child. No evidence or

5   argument was presented that he had any decision making power in regard to the custody dispute.

6           Lacking this evidence, can the willful and malicious conduct of Mrs. Carbray be

7   attributed to Mr. Carbray for purposes of plaintiffs' dischargeability complaint? Where no agency

8   relationship exists, courts do not generally impute the wrongdoing of one spouse to an "innocent"

9   spouse in holding a debt nondischargeable. The marital status alone does not create an agency

10  relationship. Tsurukawa v. Nikon Precision Inc. (In re Tsurukawa), 258 B.R. 192, 198 (B.A.P. 9th

11  Cir. 2001). Also See, Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 287 B.R. 515, 526

12  (B.A.P. 9th Cir. 2002)(Reaffirming holding that the marriage relationship itself is an inappropriate

13  basis for imputing §523(a) liability, but holding married business partners can be held vicariously

14  liable). Plaintiffs having established no facts showing individual culpability, no §523(a)(6) liability

15  will be imputed to Mr. Carbray. Amended complaint at p. 4, dkt. 8; Fiorentino test.; Ex. 4.

16          10.    Given that plaintiffs' claim is dischargeable as to one spouse and non

17  dischargeable as to the other, what is the liability of the marital community? Community property

18  is not liable for a debt unless it is shown to be a community claim. Case v. Maready (In re

19  Maready), 122 B.R. 378, 381 (B.A.P. 9th Cir. 1991). Whether creditor holds a community claim

20  is determined by state law. F.D.I.C. v. Soderling (In re Soderling), 998 F.2d 730, 733 (9th Cir.

21  1993). Regarding Arizona intentional torts, the community is not liable for one spouse's malicious

22  acts unless it is specifically shown that the other spouse consented to the act or that the community

23  benefitted from it. Selby v. Savard, 134 Ariz. 222, 655 P.2d 342, 349 (Ariz. 1982)(Holding marital

24  community and wife not liable for husband's defamation of a public official).

25          While it is clear Mr. Carbray had knowledge of the custody dispute between his wife

26  and the child's father, plaintiffs made no specific evidentiary showing of his precise role or actions,

27  if any. Certainly all parties would have greatly benefitted had Mr. Carbray successfully influenced

28  his wife to return her, not his, child to Argentina. Once Mrs. Carbray allowed the Argentine legal

1  system to work, she was ultimately able to return to the United States with her child.  What Mr.

2  Carbray actually did or did not do, however, was not specifically shown.  Unlike his wife, there is

3  no indication he has legal training sufficient to analyze the legal aspects of this international dispute

4  and the duties created by ICARA.  Unlike his wife, he has no legal custody of the child.  The court

5  concludes no community liability was established, as plaintiffs' failed to establish their case by the

6  preponderance of the evidence.

7                                                    **ORDER**

8          Plaintiffs' complaint will be sustained against defendant Maria Augusta Gondra

9  Carbray and the judgment awarded by the Maricopa County Superior Court will not be discharged

10  by a Chapter 7 bankruptcy discharge.  The state judgment will be a liability personally against Mrs.

11  Carbray and her sole and separate property.  This debt will not be a community claim.  Plaintiffs'

12  complaint against defendant Robert Joseph Carbray will be dismissed with prejudice.  A judgment

13  will subsequently be issued by this court.

14                                                    DATED this 5th day of September, 2006.

15

16

17                                                    _____
                                                     George B. Nielsen, Jr.
                                                     United States Bankruptcy Judge
18

19

20  Copies mailed this 5th day
    of September, 2006, to:
21
    Robert Joseph Carbray
22  Maria August Carbray
    18014 N. 32nd Lane
23  Phoenix, AZ 85053
    Defendants, Pro Se
24
    John W. Acer
25  5125 N. 16th Streeet #A-203
    Phoenix, AZ 85016-3927
26  Attorney for John W. Acer and Marcelo O. Fiortenino

27  By /s/Rachael M. Stapleton
          Judicial Assistant
28

                                                    –  9  –